IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MICHAEL ANDREW MCCANN, | § | |
| DEBTOR | § | CASE NO.    04-38909 |
| | § | |
| HUNTINGTON NATIONAL BANK, | § | |
| PLAINTIFF | § | |
| | § | |
| V. | § | ADVERSARY NO.  04-3871 |
| | § | |
| MICHAEL ANDREW MCCANN, | § | |
| DEFENDANT | § | |

## MEMORANDUM OPINION

Before the Court is the complaint of Huntington National Bank against debtor Michael Andrew McCann seeking a money judgment and the non-dischargeability of its debt.  Huntington contends that debtor is liable to it for damages for violations of Michigan state law and civil RICO, 18 U.S.C. §1964, and that the debt is not dischargeable under 11 U.S.C. §§ 523(a)(2), (4), and (6). Huntington further objects to debtor's discharge under 11 U.S.C. §§ 727(a)(3)-(5).

This Court has jurisdiction of the underlying state law claims and to determine debtor's discharge and the dischargeability of the debt pursuant to 28 U.S.C. §§ 1334 and 157.  However, Huntington's claim under 18 U.S.C.§ 1964 is a non-core proceeding related to debtor's chapter 7 case involving both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.  Consequently, this Court severs the RICO claim  and submits proposed findings of fact and conclusions of law to the district court under 28 U.S.C. § 157(c).

After due consideration, this Court finds that defendant McCann is liable to the plaintiff for damages under Michigan state law and that the debt is not dischargeable. In addition, the Court concludes McCann is not entitled to a discharge.  Further, the Court recommends that debtor be found liable to Huntington for civil damages under 18 U.S.C. § 1964.

## I.  Facts

Debtor Michael McCann is a dentist practicing in Brazoria, Texas.  McCann endorsed two checks during the spring and summer of 2002, in the amounts of $299,214.38 and $45,000.00 that were deposited in an account at and credited by Huntington, but which were ultimately returned as altered and counterfeit. Huntington suffered a loss of $219,214.38.  It has recovered some of the funds, but $252,867.55 remains due.

Huntington's security manager in charge of fraud investigations in West Michigan, Lawrence Rodriguez, testified at trial concerning the results of his investigation of these checks and most of the facts were undisputed by McCann.  The check in the amount of $299,214.38 (pl. ex. 6) was issued by Tosco Corporation of Phoenix, Arizona, on April 8, 2002, payable to PSC Industrial Outsourcing Inc.  Tosco mailed the check to PSC.  The check was drawn on Fleet Bank.  At some point, someone altered the check to include as additional payees, Dr. Michael McCann and HLS Limited.  McCann endorsed the check and sent it by U.S. Mail, UPS, or Federal Express to an associate, Kenneth Vandenberg, to deposit and to use the funds to pay McCann's expenses. Vandenberg deposited the check into an account he had opened at Huntington National Bank in Michigan in the name of All Sport Administrative Programs Inc.

On July 19, 2002, this check was returned to Huntington as a paid, but altered item by Fleet Bank with a request to Huntington to remit $299,214.38. On December 23, 2002, Huntington issued a cashiers check in the amount of $299,214.38 to Fleet Bank.

Meanwhile, from May 7, 2002, through May 17, 2002, $231,317.64 was debited from the All Sport account through checks, wire transfers, and check card usage. Many of the cash withdrawals from the All Sport account were in amounts greater than a thousand dollars, but less than $10,000.

McCann directed Vandenberg to transfer $100,000 from the All Sport account to Business Enhancements, a CPA firm, to pay McCann's business and personal expenses in Texas. Vandenberg sent the funds by wire transfer in May and June 2002. These funds went to pay McCann's expenses including: payment on a contract for deed executed by McCann to purchase a ranch; payment to a worker who cleared the ranch land; payment to a feed store; payment for a truck; payment to another ranch worker; payment to MasterCard for McCann's office expenses; and payment of McCann's daughter's college tuition.

The second check is a cashier's check (pl. ex 11) issued on June 11, 2002, by Bank of America payable to Dr. Michael McCann and ASAP, Inc. in the amount of $45,000. McCann endorsed this check and sent it to Vandenberg for deposit. Vandenberg deposited the check in All Sport's account at Huntington on June 18, 2002. This check was returned unpaid as a counterfeit item.

In addition to All Sport Administrative Programs, Inc., Vandenberg created other companies; Paramount Companies, Inc., High Level System (a/k/a HLS, Ltd. or High Level Software), and E-

Class, for which he opened bank accounts in which to transfer funds.  Additionally, McCann maintained a bank account for a fictional and self-settled trust, BTL Consultants.

In addition to the checks for which Huntington suffered losses, McCann endorsed and forwarded to Vandenberg for deposit: (1) a forged check (pl. ex. 89) drawn on an account of Sonicwall, Inc. of Sunnyvale, California, at Comerica Bank of California dated October 7, 2001, for $41,317.12, payable to Paramount Companies, Inc. and Dr. Michael McCann, deposited in an account of Paramount Companies, Inc. at NBD Bank in Michigan; (2) a forged check (pl. ex. 95) drawn on an account of Iven Kwok Sing Tse in trust at HSBC in Vancouver, British Columbia, dated February 5, 2002, for $400,400.00 in Canadian funds payable to Dr. Michael McCann (ASAP, Inc.) deposited in an account of All Sport Administrative Programs at Bank One in Michigan; (3) a counterfeit, forged, or altered check (pl. ex. 97) drawn on an account of Diamond Bank Limited of Lagos Nigeria located at CitiBank, N.A. in New York, dated February 25, 2002, for $23,500,000.00, payable to Dr. Micheal (sic) McCann, deposited in an All Sport Administrative Programs account at Bank One in Michigan; (4) a forged draft (pl. ex. 98) issued by Bank of China, Hong Kong Branch, Canton Rd. Sub-branch, dated February 27, 2002, for $28,350,000.00, payable to Dr. Micheal (sic) McCann drawn on Bank of China, New York Branch in New York, New York; (5) a counterfeit, forged, or altered check (pl. ex. 115) issued by Wells Fargo & Company in San Francisco, California, dated July 25, 2002, for $56,000, payable to Dr. M. McCann, deposited in an account of BTL Consultants at Wells Fargo in Texas; (6) a counterfeit, forged, or altered cashier's check (pl. ex. 117) issued by Bank of America for $45,000, payable to Dr. Michael A. McCann, deposited on August 29, 2002, in an account of BTL Consultants at Wells Fargo in Texas; (7) a counterfeit, forged, or altered cashier's check (pl. ex. 119) issued by Bank of Texas in Dallas, Texas

dated November 5, 2002, for $49,567.00, payable to Dr. Michael. A. McCann deposited in an account of BTL Consultants at Wells Fargo in Texas; and (8) a counterfeit, forged, or altered check (pl. ex. 123) drawn on Thrivent Financial for Lutherans, dated July 16, 2003, for $20,000.00, payable to Michael A. McCann, deposited in an account of BTL Consultants at Wells Fargo in Texas. Of the funds derived from altered checks deposited in the All Sport account at Huntington, McCann directed Vandenberg to repay Bank One for some of the loss it suffered from the foregoing checks.

McCann testified that the checks were sent to him in connection with his right to inherit $23,500,000.00, plus interest, from a relative, Jacques Monroe, who had died in Nigeria. McCann testified that the checks were advances against his inheritance from persons assisting him in obtaining the funds from Nigeria and to whom McCann gave percentages in his inheritance. McCann testified that he had hired Vandenberg to facilitate obtaining the Nigerian inheritance. On December 12, 2000, and again on March 28, 2001, McCann executed an "appointment of mandate" to authorize Kenneth Vandenberg to "manage, negotiate and sign investment contract(s) for my investment of $20,000,000.00 USD (Twenty Million) United States Dollars, to be placed with investment groups known to the Consultant, subject to agreements which are acceptable to him." In addition to the twenty million, the "appointment of mandate" is for "the holding or transfer of $3,500,000.00 . . ." The total twenty three million dollars being the amount to which McCann claims he is entitled from the inheritance. The two "mandates" differ in the location of the $3,500,000.00, one stating that the funds are in "the Andrews Financial Services, Inc. Client Trust Account in the State Bank of China, Hong Kong Branch," the other stating that the funds are located in "the Wesley E. Amundson, Client Trust Account." In addition to Vandenberg, McCann claims he communicated

with two men in London and New York concerning the checks and that he instructed the man in London, David Williams, to put his, McCann's, name on the checks.

McCann explained that he never told his two sisters or mother about the inheritance until the trial because he did not want to get their hopes up about obtaining the money. At trial, one of McCann's sisters testified that she knew no relative named Jacques Monroe.

McCann filed a chapter 11 petition on June 25, 2004. He filed chapter 11 schedules and a statement of financial affairs on July 26, 2004. Huntington filed the instant adversary proceeding on October 22, 2004. McCann converted his case to one under chapter 7 on February 18, 2005. McCann filed his chapter 7 schedules and statement of financial affairs on March 21, 2005.

Both sets of schedules are substantially similar in that debtor denies owning any real estate, a business, a farm or farm supplies, or any animals, McCann also states that he receives no income and has no expenses. In answer to statement of financial affairs question 18, debtor discloses that a dentist practice located at "324 N. Brooks, Brazoria" existed within the six years preceding the commencement of the bankruptcy, but he does not describe the beginning and ending dates as the question requires. Debtor's chapter 11 schedule G of executory contracts and unexpired leases, discloses that debtor intends to assume a contract for deed, a land lease, and a lease for an office, but does not disclose any other identifying information concerning these items. Debtor's chapter 7 schedule G discloses only the office lease. Debtor's chapter 7 individual debtor's statement of intention discloses that debtor intends to reaffirm a debt for livestock and accounts receivable to Devereaux Macy, but does not disclose where these items are located or provide any further description.

McCann practices dentistry at 324 North Brooks, Brazoria, Texas. In August 2002 McCann was making $600,000 a year with his dental practice. McCann claims that he currently receives no income from the dental practice because it is owned by BTL Consultants, a trust he says he created to protect his assets from his liabilities. BTL Consultants, McCann testified, owns not only his dental practice, but also a lab for creating crowns and dentures and a ranch he purchased on a contract for deed. The ranch consists of 64.648 acres in Brazoria County, Texas, purchased under a contract for deed from Frank and Dorothy Novosad, plus an additional tract of 9.615 acres purchased under a contract for deed from S.J. and Marian Matula, plus an third tract of 45 acres purchased under a contract for deed from L.D. Kaltwasser. In 1999, McCann acquired cattle, equipment, and a pickup truck for the ranch. Additionally, in 2000, McCann acquired more cattle.

According to McCann, he receives no income from his dental practice because BTL receives all of his income and pays all of his expenses. The Court notes that this arrangement may account for the proof of claim filed in the bankruptcy case by the IRS in the amount of $2,577,792.03. McCann admits that he makes all of the decisions about his dental practice, the lab, and the ranch. Until he filed bankruptcy, he signed all of the checks for BTL Consultants. McCann testified that he does not have a copy of the trust document because in December 2003, his home burned down. What records remain are in the possession of his bankruptcy trustee.

## II.

The Court finds that other than his testimony that he suffered a fire, McCann's testimony is not credible. The Court finds that BTL Consultants is a fiction or at best a self-settled trust of which McCann is the sole beneficiary. The Court finds that McCann individually owns his dental practice, dental lab, farm, and farm animals, and receives an income from the dental practice. He incurs

expenses which should have been reflected in his schedules and statement of financial affairs.   The Court finds that debtor knowingly falsified his schedules and statement of affairs and intended to conceal his assets and income from the court and his creditors.

Further, the Court finds that McCann knew that the checks described herein which he endorsed were counterfeit, forged, or altered and that he was not an authorized payee of the checks. The Court finds that McCann intended Huntington to rely upon the deposit of the two forged checks in the ASAP account as a basis to allow withdrawals, that Huntington did rely on those deposits in allowing withdrawals from the ASAP account, and that Huntington suffered damages as a result.

### III.  Liability Under Michigan Law

The parties do not dispute that Michigan law governs McCann's liability concerning the checks deposited with Huntington Bank.  Under Michigan law, if an instrument is dishonored, an endorser is obliged to pay the amount due on the instrument to the person entitled to enforce the instrument or to a subsequent endorser who paid the instrument. Mich. Comp. Laws § 440.3415. Michigan law provides that one who endorses an instrument warrants to the transferee that the warrantor is a person entitled to enforce the instrument; that all signatures on the instrument are authentic and authorized; and that the instrument has not been altered.  Mich. Comp. Laws §440.3416. One to whom the warranties are made and who took in good faith may recover the loss suffered plus expenses and interest. Id.  Further, under Michigan law , a customer that transfers an item and receives consideration warrants to the transferee that the warrantor is a person entitled to enforce the item; that all signatures on the item are authentic and authorized; that the item has not been altered; and that the item is not subject to a defense or claim in recoupment of any party that can be asserted against the warrantor. Mich. Comp. Laws § 440.4207.  If an item is dishonored, a

customer receiving consideration is obliged to pay the amount due on the item to the transferee. Id.
A person to whom the warranties are made and who took the item in good faith may recover from
the warrantor as damages the amount of the item plus expenses and loss of interest. Id. The Court
finds that Huntington is entitled to damages from McCann under the foregoing statutes in the amount
of $252,867.55, plus interest and attorneys fees.

## IV. Section 523 - Non-Dischargeable Debt

Huntington contends that its debt is not dischargeable under 11 U.S.C.§§ 523(a)(2)(A), (4),
and (6). Bankruptcy Code §§ 523(a)(2)(A), (4), and (6) provide:

> a) A discharge under section 727 . . . does not discharge an individual debtor from
> any debt–

. . . .

> (2) for money, property, services, or an extension, renewal, or refinancing of credit,
> to the extent obtained by--
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement
> respecting the debtor's or an insider's financial condition;

. . . .

> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or
> larceny;

. . . .

> (6) for willful and malicious injury by the debtor to another entity or to the property
> of another entity . . .

11 U.S.C. §§ 523(a)(2)(A), (4), and (6).

The Fifth Circuit has determined that to prove non-dischargeability under § 523 under "an
'actual fraud' theory, the objecting creditor must prove that: '(1) the debtor made representations;
(2) at the time they were made the debtor knew they were false; (3) the debtor made the
representations with the intention and purpose to deceive the creditor; (4) that the creditor relied on
such representations; and (5) that the creditor sustained losses as a proximate result of the

representations.'" RecoverEdge L.P. v. Pentecost, 44 F.3d 1284, 1293 (5th Cir. 1995). The Court finds that by endorsing and depositing the forged, altered, or counterfeit checks which included his name as payee, McCann represented to Huntington Bank that he was an authorized payee of the checks; that they were not altered in any way; that McCann knew at the time of his endorsement and the deposits that he was not an authorized payee of the checks and that the checks were altered; that McCann made the representations with an intent to deceive Huntington Bank; that Huntington Bank relied on the representations in allowing withdrawals from the account; and that Huntington Bank suffered a loss in the amount of $252,867.55, plus interest and attorneys fees, as a proximate result of the misrepresentations. The Court finds that the debt is not dischargeable under 11 U.S.C. § 523(a)(2)(A).

The Fifth Circuit has held that the discharge exception under 11 U.S.C. § 523(a)(4) "was intended to reach those debts incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal acts; both classes of conduct involve debts arising from the debtor's acquisition or use of property that is not the debtor's." In re Boyle, 819 F.2d 583, 588 (5th Cir.1987). For purposes of § 523(a)(4), larceny is "the fraudulent and wrongful taking and carrying away of the property of another with the intent to covert such property to the taker's use without the consent of the owner." In re Clayton, 198 B.R. 878, 884 (Bankr.E.D.Pa. 1996). "Larceny thus requires that the initial appropriation of the property of another be wrongful." Id. The Court finds that the checks which McCann endorsed and sent for deposit in Huntington Bank were not McCann's property, that McCann wrongfully obtained the checks, and that he intended to convert the checks to his use without the consent of the owners of the checks. The Court finds that Huntington's debt is not dischargeable under 11 U.S.C. § 523(a)(4).

The Supreme Court has determined that to be excepted from discharge as a debt for a willful and malicious injury under 11 U.S.C. § 523(a)(6) "takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998). The Court finds that McCann intended the injury sustained by Huntington. The Court finds that the debt is not dischargeable under 11 U.S.C. § 523(a)(6).

## V. Section 727 - Denial of Discharge

Huntington contends that McCann is not entitled to a discharge under 11 U.S.C. §§ 727 (a)(2), (3), (4), and (5), which provide:

> (a) The court shall grant the debtor a discharge, unless--
> . . . .
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--
>
> (A) property of the debtor, within one year before the date of the filing of the petition; or
>
> (B) property of the estate, after the date of the filing of the petition;
>
> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;
>
> (4) the debtor knowingly and fraudulently, in or in connection with the case–
>
> (A) made a false oath or account . . .
>
> (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

11 U.S.C. §§ 727 (a)(2), (3), (4) and (5).

The Court finds that McCann has made a false oath in the bankruptcy case in both his schedules and statement of financial affairs which were submitted under penalty of perjury. McCann has knowingly and fraudulently failed to schedule his assets and to disclose his income and other financial affairs. The Court finds that McCann is not entitled to a discharge under 11 U.S.C. § 727(a)(4).

Huntington contends that by depositing the forged, altered, or counterfeited checks in the All Sport account in efforts to obtain funds from Huntington, McCann, Vandenberg, and All Sport committed a civil conspiracy under Michigan law. Michigan law provides that a civil conspiracy is, "a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." The Mable Cleary Trust v. The Edward-Marlah Muzyl Trust, 686 N.W.2d 770, 786 (Mich. App. 2004). Further, "a claim of civil conspiracy must be based on an underlying actionable tort." Id. The Court finds that a civil conspiracy has been committed by McCann, but Vandenberg and All Sport are not defendants in this adversary proceeding and no further damages accrue to Huntington under its claim for civil conspiracy.

The Court severs Huntington's cause of action for civil damages under RICO, 18 U.S.C. §1964, and will by separate memorandum submit proposed findings of fact and conclusions of law to the district court. The Court will enter final judgment as to Huntington's cases of action under Michigan law and as to debtor's discharge and the dischargeability of the debt to Huntington.

Signed this 15 day of Dec, 2005 at Houston, Texas.

KAREN K. BROWN
CHIEF UNITED STATES BANKRUPTCY JUDGE